UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 15-cr-158-pp

STEVEN JIMMERSON,

Defendant.

---

**ORDER GRANTING DEFENDANT'S *PRO SE* MOTION TO CLARIFY AND GRANTING REQUEST FOR JUDICIAL RECOMMENDATION (DKT. NO. 176)**

---

On August 3, 2026, the court received from the defendant a document titled "Motion for Clarification," in which he asked the court to "clarify its stance as to this defendants' [sic] eligibility for the second chance act[.]" Dkt. No. 176 at 1. The motion explains that, as of August 2026, the defendant had been incarcerated for close to eleven years and now has reached the date on which he is eligible for transfer to a residential reentry center. Id. It cites 18 U.S.C. §3621(b)(4)(a) and argues that if the court issues an order clarifying its intent about the defendant's reentry rehabilitation to the community, the defendant would have more of a chance to get the days he needs for successful reintegration into the community. Id. at 2.

The defendant explains that his employment history is "almost non-existant" [sic], that he has one child (who is seventeen) and that he has no means of transportation upon release, nor any housing. Id. The defendant

states that his original release plan was to move to Texas with his mother and some other family members, but that due to financial troubles in his family, he will "be forced to do supervised release and halfway house in Milwaukee, WI, where [he] has almost no support." Id. He says that he has spent the majority of his time in a penitentiary, where he spent "23 hours locked in a 6x9 cell, (some-times smaller) with no mental stimulants, and violence is just as much of your day as the three meals they serve you a day . . . ." Id. He argues that for the Bureau of Prisons to simply "thrust" him back into society "with the bare minimum" would thwart any rehabilitative efforts made while he's been incarcerated. Id.

Finally, the defendant explains that his case manager tells him that she is recommending that he spend over a year in a halfway house. Id. He says that she has encouraged the defendant to write the court, asking it to clarify its intent. Id. at 2-3. The defendant's correspondence and the BOP's inmate locator tool show that the defendant is presently incarceration at USP Pollock in Pollock, Louisiana, with a release date of January 25, 2028. https://www.bop.gov/inmateloc/ (last visited Nov. 10, 2026).

In November of 2015, the defendant pled guilty to four counts of bank robbery (Counts One, Four, Six and Seven), one count of Hobbs Act robbery (Count Two) and one count of brandishing a firearm in furtherance of a crime of violence (Count Five). Dkt. Nos. 19 (plea agreement) and 23 (change of plea hearing). The grand jury returned the superseding indictment on October 6, 2015, dkt. no. 1; the defendant signed the plea agreement only four days later,

on October 10, 2016, dkt. no. 19 at 15. The late Judge Rudolph T. Randa accepted the defendant's plea on December 9, 2015. Dkt. No. 23. In other words, the defendant accepted responsibility for his conduct almost immediately after being charged.

Between the defendant's guilty plea and his sentencing hearing, the clerk's office reassigned his case from Judge Rudolph T. Randa to this court. On October 17, 2016, this court sentenced the defendant and entered judgment a week later. Dkt. Nos. 41 (sentencing hearing minutes) and 42 (judgment). The court sentenced the defendant to a total sentence of 168 months (fourteen years), to run concurrently with the sentence imposed in Milwaukee County Circuit Court Case No. 2011CF001201, and with five years of supervised release to follow. At defense counsel's request, the court agreed to recommend that the Bureau of Prisons place the defendant in a facility as close to Texas as possible. Dkt. No. 41 at 4. The court made that recommendation in the judgment. Dkt. No. 42 at 2. During that sentencing hearing, the defendant spoke at length about the losses he'd suffered in his life, but also admitted that he knew what he had done was wrong, that he'd been thinking only of himself when he committed the crimes and that he'd not been thinking of the victims. Dkt. No. 41 at 4. The court gave the defendant a sentence a year less than what the government recommended—in part because of the defendant's acceptance of responsibility.

Since his sentencing, the defendant has sought several forms of relief from this court. See Dkt. No. 63 (motion to vacate under 28 U.S.C. §2255); Dkt.

No. 74 (motion to defer restitution); Dkt. Nos. 76 & 77 (motion to appoint counsel and motion for detention time credit); Dkt. No. 113 (motion to appoint counsel); Dkt. No. 120 (motion for compassionate release); Dkt. No. 156 (motion to adjust sentence); Dkt. No. 163 (motion to direct USP Florence to allow defendant to purchase materials); and Dkt. No. 168 (motion to reduce sentence).

The Second Chance Act of 2007 (18 U.S.C. §3672, *et seq.*) gives the BOP the authority to provide transitional housing in a residential reentry center for, among other things, rerelease custody, to help formerly incarcerated person by giving them reentry programming to help them transition back into the community. The court perceives that in this most recent motion, the defendant is asking—ten years after the court sentenced him and issued its judgment—for the court to recommend that he be placed in a residential reentry center for as long as possible. It is not clear whether the court has the authority to make such a post-sentencing recommendation: "While it is relatively common for the sentencing judges to make recommendations about placement *at the time of sentencing*, it is unresolved in this circuit whether *post-sentencing* recommendations by district judges are permitted." United States v. Timm, Case No. 13-cr-236-JPS, 2021 WL 1515483, at *3 (E.D. Wis. Apr. 16, 2021); see also United States v. Jacko, Case No. 14-cr-98-PP, 2019 WL 398829 at *2 (E.D. Wis. Jan. 31, 2019) (expressing similar concerns).

The defendant cites 18 U.S.C. §3621(b)(4)(B), which provides that "when the BOP is designating the particular penal or correctional facility in which to

place an inmate, it should consider (among other factors) 'any statement by the court that imposed the sentence . . . recommending a type of penal or correctional facility as appropriate.'" Jacko, 2019 WL 398829, at *1. This provision allowed the court to recommend—at the time of sentencing—that the BOP place the defendant in a facility as close as possible to Texas. See Dkt. No. 42 at 2. But §3621(b)(4)(B) says nothing about recommendations from the sentencing court regarding placement in a residential reentry center.

The next subsection, 18 U.S.C. §3621(c)(1), discusses reentry and directs the director of the BOP, "to the extent practicable," to

> ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. §3621(c)(1). So, §3621(b)(4)(B) says that at sentencing, a court can make a recommendation about a particular penal or correctional facility which the BOP may choose to follow. Then, once the defendant is in custody, the BOP must comply with the direction in §3621(c)(1), 'to the extent practicable.'" Jacko, 2019 WL 398829, at *2. But neither of the statutes discuss the particular situation the defendant raises—a court making a recommendation to the BOP *after* sentencing and *after* the deadline for appeal has passed.

Recommendations from the sentencing court to the BOP appear in a defendant's judgment of conviction. See Dkt. No. 42 at 2. One might expect that to update a placement recommendation, the court would need to issue an amended judgment. But the Federal Rules of Criminal Procedure allow

amendments or corrections to criminal judgments only to correct a sentence that "resulted from arithmetical, technical or other clear error," Fed. R. Crim. P. 35, or to "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission," Fed. R. Crim. P. 36. Neither of these rules would give the court the authority to do as the defendant asks. Jacko, 2019 WL 398829, at *2.

For this reason, "some courts have concluded that they lack authority to make recommendations after sentencing." See United States v. Rehwinkel, Case No. 12-cr-217, 2018 WL 2389711, at *2 (E.D. Wis. May 24, 2018) (collecting cases). Other courts have skirted this restriction by concluding that although the Federal Rules of Criminal Procedure do not supply an avenue to issue an amended judgment, nothing in the rules prevents a court from issuing a stand-alone recommendation apart from the judgment. Id. (collecting cases). The Seventh Circuit has emphasized that district courts lack authority to *change* a defendant's place of imprisonment (the BOP retains "plenary control over its inmates' placement") but has held that "a district court may [ ] *recommend* a new placement; it may not *order* it." United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021) (emphasis added).

This court has both issued (United States v. Sanford, Case No. 15-cr-158 2022 WL 832094 at *2 (E.D. Wis. Mar. 21, 2022) (the defendant's co-defendant)) and declined to issue (Jacko, 2019 WL 398829, at *2) recommendations for placement into residential reentry/community confinement. The court's decisions have turned on the circumstances of the

individual defendant. For this defendant—Steven Jimmerson—the court previously has written (in denying the defendant's motion for a sentence reduction/compassionate release):

> The defendant has interacted with the court many times over the seven and a half years since the sentencing hearing. The defendant has shared with the court some of the hardships he has endured during those years, the losses he has suffered, the struggles with his mental and physical health. In the documents that the [Federal Defender Services of Wisconsin] attorney filed for the defendant, the defendant also shared just how much hard, thoughtful work he has done to prepare for the life he will lead when he is released. It is difficult to express how impressed the court is with the detailed, thorough work the plaintiff has done gathering resources, planning for a career, thinking about the types of challenges he will face when released and what he will need to meet them. The court never has seen a defendant with as detailed a plan as Mr. Jimmerson has presented to the court. And the court can tell that he is sincere when he says that he has thought a lot about how he got here, and that he has changed. The court is not denying this motion because it doesn't believe the defendant, or because it doesn't agree that the sentence he is serving is harsh. It is not denying the motion because it does not think that the defendant is worthy of a second chance and a better life.

Dkt. No. 173 at 7. Those remarks demonstrate that this court believes, and has believed for some time, that this defendant is an appropriate candidate for a recommendation that the BOP place him in a residential reentry facility for as long as is allowed by the statute.

Understanding both that the BOP is in the best position to decide when to transition someone to a residential reentry facility and that the court cannot order the BOP to change the defendant's placement, the court **GRANTS** the defendant's motion. Dkt. No. 176.

As implied in the court's comments at sentencing and in prior orders, the court believes that Steven Jimmerson would greatly benefit from being placed

in a residential reentry center for as long as possible (twelve months) before being released to supervision. He is, and has been, remorseful about his crimes, and has shown insight into why he committed them and what he needs to do to change. After being in prison for eleven or so years, however, he will need all the resources he can get to implement his plans for being a productive, pro-social member of society upon his release. He has the will; he needs the tools.

Accordingly, the court **GRANTS** the defendant's motion to clarify. Dkt. No. 176.

The court **RECOMMENDS**, in an advisory capacity only and to the extent practicable, that the Bureau of Prisons consider transferring the defendant to a residential reentry facility for as long as possible before his ultimate release date.

Dated in Milwaukee, Wisconsin this 13th day of November, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**